955 F.2d 764
 293 U.S.App.D.C. 436
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY
v.
CORSON & GRUMAN COMPANY, et al., Appellants.
 No. 91-7081.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 28, 1992.
 
 Before WALD, STEPHEN F. WILLIAMS and D.H. GINSBURG, Circuit Judges.
 
 JUDGMENT
 PER CURIAM
 
 1
 This cause came to be heard on appeal from the judgment of the District Court, and it was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the court, that the judgment of the District Court is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 This suit arises under a contract requiring appellants Corson & Gruman and Jones & Artis Construction Co. to perform landscaping work for the Washington Metropolitan Area Transit Authority (WMATA). The original contract, signed in 1976, required appellants to use soil with a pH level between 6.2 and 7.0 (J.A. 24). Modification No. 008 of the contract, added in June of 1979 to cover the re-landscaping of an area on which the original contract work had proven unsuccessful, required appellants to use "Taylor sandy loam or other appropriate equivalent" (J.A. 14-15). Appellants installed the soil in August 1979 (see J.A. 50, 62), and completed the landscaping work in November (J.A. 17). In December inspectors found yellow or dead sod, and tested the pH level of the soil at 3.4 (J.A. 18). Further tests in April 1980 uncovered pH levels of 3.8 and less; by this time most of the sod was dead (J.A. 18-19). WMATA's engineers determined that the high level of acidity and the high sand content of the soil caused the death of the sod (J.A. 19). After appellants refused to replace the soil, the National Park Service performed this work and billed WMATA (J.A. 10). WMATA sought damages from appellants, and prevailed before a contracting officer in July of 1982 (J.A. 12). Appellants lost their appeal to the Corps of Engineers Board of Contract Appeals. Corson & Gruman Co., Inc. and Jones & Artis Construction Co., 88-2 BCA p 20,569. WMATA sued to enforce the administrative decision in the United States District Court for the District of Columbia, and prevailed. Washington Metropolitan Transit Authority v. Corson & Gruman Co., et al., No. 89-2431, D.D.C. (April 18, 1991).
 
 
 5
 WMATA argues that appellants breached the contract by using soil that could not support plant life because its pH level and sand content violated the specifications of the original contract. Appellants argue that Modification No. 008 superseded the relevant portions of the original contract, and Modification No. 008 required them to use Taylor sandy loam. Since in the modified contract WMATA insisted that appellants use Taylor sandy loam, WMATA bore the risk that Taylor sandy loam would not do the job. See Spearin v. United States, 248 U.S. 132 (1919) (when contractor obeys specifications in government contract, it cannot be held liable if these specifications are faulty).
 
 
 6
 We need not address WMATA's argument that the original contract prevails over Modification No. 008, because WMATA wins even under appellants' interpretation. Spearin would save appellants only if they actually delivered Taylor sandy loam, and the Board's finding that they did not deliver it is supported by substantial evidence. In concluding that substantial evidence supports the finding, we employ the Board's assumption that appellants had the burden to show delivery of Taylor sandy loam, an assumption that appellants have not disputed.
 
 
 7
 Appellants installed the topsoil in August 1979. Tests performed on this soil in December 1979 and April 1980 yielded pH levels of less than 3.8 (J.A. 18-19), whereas tests performed on Taylor sandy loam showed pH levels ranging between 4.7 and 5.4 (J.A. 17). Since appellants failed to offer evidence that the pH level of soil may decline this much over such a short period of time, either spontaneously or as a result of exogenous factors such as pollution, the Board could properly conclude that appellants installed a soil different from Taylor sandy loam.
 
 
 8
 Appellants argue that Mr. Taylor himself--the owner of the farm in which Taylor sandy loam originates--confirmed that they used Taylor sandy loam. But Taylor did not recall being present when employees of appellants took the soil from his farm (J.A. 18; see also Taylor's deposition at 15, 18-19). Although in response to a leading question he said that appellants' delivery tickets were for Taylor sandy loam (J.A. 64), Taylor's testimony is often confusing and the Board could reasonably have not found it credible. Even if credible, it leaves open the possibility that some of the soil originated in another farm or that it originated in Taylor's farm but was excavated from a level below the topsoil (cf. Taylor's deposition at 22).
 
 
 9
 An employee of Corson & Gruman and an employee of WMATA both testified that they saw on delivery trucks bringing the top soil to the site the name "Taylor", and on the delivery tickets at the site the heading "Taylor Top Soil" (J.A. 65-66, 50). But this testimony does not establish that these trucks delivered all of the soil installed by appellants at the site, or that the tickets represented all the soil delivered. Nor do they prove that this delivery was of topsoil, rather than some other kind of soil, from the Taylor farm.
 
 
 10
 Accordingly, we affirm the district court's judgment.